# United States Court of Appeals for the Federal Circuit

---

**MACLEAN-FOGG COMPANY, AND FISKARS BRANDS, INCORPORATED,**
*Plaintiffs,*

**AND**

**NINGBO YILI IMPORT & EXPORT CO., LTD.,**
*Plaintiff,*

**AND**

**EVERGREEN SOLAR, INC.,**
*Plaintiff-Appellant,*

**AND**

**EAGLE METALS DISTRIBUTORS, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**AND**

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendant-Appellee.*

---

2013-1187

———————————

Appeal from the United States Court of International Trade in Nos. 11-CV-0209, 11-CV-0210, 11-CV-0220, and 11-CV-0221, Chief Judge Donald C. Pogue.

———————————

Decided: June 3, 2014

———————————

MARK B. LEHNARDT, Lehnardt & Lehnardt LLC, of Liberty, Missouri, argued for all plaintiffs-appellants. With him on the brief was CRAIG A. LEWIS, Hogan Lovells US LLP, of Washington, DC, for plaintiff-appellant Evergreen Solar, Inc. Of counsel was WESLEY V. CARRINGTON.

TARA K. HOGAN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director. Of counsel on the brief was JOANNA THEISS, ATTORNEY, Office for Chief Counsel for Import Trade Administration, United States Department of Commerce, of Washington, DC.

ALAN H. PRICE, Wiley Rein LLP, of Washington, DC, for defendant-appellee Aluminum Extrusions Fair Trade Committee. Of counsel were ROBERT E. DEFRANCESCO, III, and LAURA EL-SABAAWI.

———————————

Before NEWMAN, CLEVENGER, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CLEVENGER.

Dissenting opinion filed by *Circuit Judge* REYNA.

CLEVENGER, *Circuit Judge*.

Evergreen Solar, Inc. and Eagle Metal Distributors, Inc. (collectively, the "Appellants") appeal the final decision of the United States Court of International Trade sustaining the final all-others countervailing duty rate set by the Department of Commerce ("Commerce") in an investigation of aluminum extrusions imported from the People's Republic of China. *MacLean-Fogg Co. v. United States*, 885 F. Supp. 2d 1337 (Ct. Int'l Trade 2012) ("*MacLean-Fogg IV*"). We have jurisdiction under 28 U.S.C. § 1295(a)(5). Because the Court of International Trade did not interpret the relevant statute correctly, we reverse.

I

When Commerce conducts a countervailing duty investigation of particular merchandise in a market involving a large number of exporters and producers, the countervailing duty statute authorizes it to select a sample of exporters and producers for individual investigation. 19 U.S.C. § 1677f-1. The countervailing duty statute provides in § 1671d for the calculation of an "all-others" countervailing duty rate which applies to exporters or producers who are not individually investigated. Exporters or producers who are initially selected by Commerce are called mandatory respondents. Mandatory respondents who cooperate with Commerce's investigation are given countervailing duty rates particular to their individual circumstances. Mandatory respondents who fail to cooperate to the best of their ability are given rates determined under § 1677e(b) using adverse facts available ("AFA"). Exporters or producers who are not initially selected for investigation and who wish to participate may supply the necessary information to Commerce to calculate individual countervailing duty rates for them. Such exporters or producers are called voluntary respondents. "All-others" are those exporters or producers not examined as initial selectees or as voluntary respondents.

The general rule for calculation of the all-others countervailing duty rate specifies that the rate will be "an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely under section 1677e of this title." § 1671d(c)(5)(A)(i). There is an exception to the general rule for calculation of the all-others rate. The exception comes into play "[i]f the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e." § 1671d(c)(5)(A)(ii). When the exception is applicable, the statute permits Commerce to "use any reasonable method to establish an all-others rate for exporters and producers not individually investigated." *Id.*

This case arose from a countervailing duty investigation of aluminum extrusions from the People's Republic of China, pursuant to a petition filed by Appellee Aluminum Extrusions Fair Trade Committee. There are three categories of exporters or producers in this case. First, the three selected mandatory respondents who refused to cooperate and who consequently were awarded rates entirely under § 1677e. Second, the two voluntary respondents, who after individual investigation were awarded individual rates that reflected their own particular circumstances. And third, the all-others, some of whom are the Appellants, who challenge the legality of the all-others rate Commerce established in this case.

To establish the all-others rate, Commerce first discarded the AFA rate assigned to the three mandatory respondents—correctly so, because the all-others rate statute mandates exclusion of rates determined entirely under § 1677e. Next, Commerce excluded the individual rates assigned to the voluntary respondents, relying on 19 C.F.R. § 351.204(d)(3), which expressly requires exclusion

of countervailable subsidy rates for voluntary respondents from the calculation of the all-others rate. Having excluded the voluntary respondents' countervailing duty rates, Commerce had nothing left with which it could calculate the all-others rate under the general rule, 19 U.S.C. § 1671d(c)(5)(A)(i). Commerce thus turned to the process of "us[ing] any reasonable method to establish an all-others rate for exporters and producers not individually investigated" under the exception rule. § 1671d(c)(5)(A)(ii). Commerce decided to impose the 374.15% rate, the AFA rate assigned to the non-cooperating mandatory respondents, on all-others as a reasonable method.

Four domestic importers and one exporter of extruded aluminum challenged Commerce's action in the Court of International Trade. The plaintiffs argued that 19 U.S.C. § 1677d was plain on its face in requiring Commerce to use countervailing duty rates for voluntary respondents in calculating the all-others rate, and that Commerce's regulation to the contrary was unlawful. The plaintiffs also challenged the 374.15% rate as resulting from an unreasonable method.

The Court of International Trade concluded that § 1677d is ambiguous on the question of whether countervailing duty rates assigned to voluntary respondents should be included in the calculation of the all-others rate, and that Commerce's regulation is reasonable and thus enforceable. *MacLean-Fogg Co. v. United States*, 836 F. Supp. 2d 1367, 1373-74 (Ct. Int'l Trade 2012) ("*MacLean-Fogg I*"). The Court of International Trade however deemed the method that produced the 374.15% unnecessarily punitive and therefore unreasonable, and remanded the case to Commerce to recalculate the all-others rate. *Id.* at 1375-76. On reconsideration, the Court of International Trade reiterated its conclusion that the relevant statute is ambiguous and that the regulation is valid.

*MacLean-Fogg Co. v. United States*, 853 F. Supp. 2d 1253, 1256 (Ct. Int'l Trade 2012) ("*MacLean-Fogg II*").

After further rounds of litigation at the Court of International Trade, Commerce arrived at a "reasonable method" for establishing the all-others rate, settling on a AFA-based rate of 137.65%. *MacLean-Fogg Co. v. United States*, 853 F. Supp. 2d 1336, 1373-74 (Ct. Int'l Trade 2012) ("*MacLean-Fogg III*"); *MacLean-Fogg IV,* 885 F. Supp. 2d at 1343. The all-others rate of 137.65%, sustained by the Court of International Trade, was obtained by subtracting the contributions of subsidy programs specific to the voluntary respondents from the 374.15% rate previously given to the mandatory respondents based on all subsidy programs.

Appellants challenge the Court of International Trade's conclusions in *MacLean-Fogg I* and *II*, arguing that the countervailing duty statute is clear on its face in providing that the rates of any exporter or producer who is individually investigated must be included in the calculation of the all-others rate under the general rule. They point out that the voluntary respondents were individually investigated, and indeed received rates particular to their individual circumstances. Because the statute unambiguously provides for inclusion of voluntary respondents' rates in the calculation of the all-others rate, Appellants maintain that there is no room for regulatory interpretation of the statute and that 19 C.F.R. § 351.204(d)(3) therefore cannot lawfully take away what the statute gives: inclusion of voluntary rates in calculating the all-others rate.

Appellants also attack the Court of International Trade's conclusions in *MacLean-Fogg III* and *IV* about the methodology used to arrive at the all-others rate. They maintain that the statute does not permit direct application of the adverse inference rate as the all-others rate

and also that the all-others rate imposed was not reasonable under the particular circumstances of this case.

We agree with Appellants that the statute unambiguously requires that the rates of any individually investigated exporter or producer be included in the calculation of the all-others rate under the general rule. We hold that 19 C.F.R. § 351.204(d)(3) is invalid and reverse the judgment of the Court of International Trade, remanding for a proper determination of the all-others rate under the general rule. We do not reach the question as to whether the methodology used by Commerce to determine the all-others rate was reasonable under the exception rule.

## II

The central question on appeal is whether 19 U.S.C. § 1671d is ambiguous on the issue of whether voluntary respondent rates are to be included in the calculation of the all-others rate under the general rule. In *Chevron* analysis terms, Congress spoke directly to this question, and as explained below its intent is clear. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

§ 1671d states, in relevant part:

the all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely under section 1677e of this title . . . .

If the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish an all-others rate for ex-

porters and producers not individually investigated . . . .

§ 1671d(c)(5)(A)(i)-(ii).

The Court of International Trade held that the statute is ambiguous in *MacLean-Fogg I*. First, it looked to the fact that § 1671(c)(5)(A)(i) recites that "the all-others rate . . . be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated" without use of the word "all" to modify "exporters and producers individually investigated." *MacLean-Fogg I*, 836 F. Supp. 2d at 1373. Second, it reasoned that the statute lacked a "clear[] specif[ication]" as to "which particular subset of respondents Commerce is to rely upon when setting the all-others rate" because there is no definition of the term "individually investigated" within the statute. *Id.* Finally, the Court of International Trade identified within § 1677f-1, which provides that the individual rates determined for mandatory respondents "shall be used to determine the all-others rate under section 1671d(c)(5)," a "suggest[ion] that Congress intended for Commerce to, in some reasonable way, use rates from mandatory respondents when calculating the all-others rate under section 1671d." *Id.*

The Court of International Trade revisited the perceived ambiguity of "individually investigated" in *MacLean-Fogg II*. Appellants pointed to the consistent use of "investigate" within the Statement of Administrative Action Accompanying the Uruguay Round Agreements Act ("Statement of Administrative Action") in reference to voluntary respondents to show that "exporters and producers individually investigated" include the voluntary respondents. The Court of International Trade acknowledged the Appellants' argument, but upheld its earlier conclusion. In its words, "it does not follow that a neutral verb such as 'investigate' . . . always includes voluntary

respondents in its scope." *MacLean-Fogg II*, 853 F. Supp. 2d at 1256.

Commerce argued to the Court of International Trade that its regulation is reasonable. First, relying on the view that the statute is ambiguous on whether to count the countervailing duty rates of voluntary respondents when calculating the all-others rate, Commerce postulated that voluntary respondents and mandatory respondents should be viewed as proceeding on parallel tracks within the same countervailing duty investigation. Cooperating mandatory respondents would be investigated and given particular rates that would be factored into an all-others rate under the terms of § 1677d. Voluntary respondents would likewise be investigated and given individual rates, but in a parallel proceeding in which their rates would be excluded from the all-others calculation. Because Commerce saw the statute as ambiguous on whether voluntary respondent rates are included in calculating the all-others rate, it considered itself free in effect to conduct parallel proceedings for voluntary respondents. Such made sense, according to Commerce, because otherwise there was a risk that the rates of the voluntary respondents would reduce the all-others rate that would prevail if only the rates of mandatory respondents were considered. Commerce predicted, without any actual evidence, that voluntary respondents would be motivated to seek individual rates only when they had some real-world expectation that their individual rates would be less than the rates that Commerce would determine for mandatory respondents. Commerce's justification for its rejection was deemed reasonable by the Court of International Trade, which noted the court's obligation to uphold Commerce's interpretation "even if the court does not believe it to be the best statutory interpretation." *MacLean-Fogg I*, 835 F. Supp. 2d at 1372 n.7.

III

With regard to the treatment of voluntary respondents, Congress spoke directly in § 1677m, which states in relevant part:

*(a) Treatment of voluntary responses in countervailing or antidumping duty investigations and reviews*

In any investigation . . . in which the administering authority has, under . . . section 1677f–1 (e)(2)(A) of this title . . . , limited the number of exporters or producers examined . . . the administering authority shall establish an individual countervailable subsidy rate . . . for any exporter or producer not initially selected for individual examination under such sections who submits to the administering authority the information requested from exporters or producers selected for examination, if—

(1) such information is so submitted by the date specified . . . for exporters and producers that were initially selected for examination . . . and

(2) the number of exporters or producers who have submitted such information is not so large that individual examination of such exporters or producers would be unduly burdensome and inhibit the timely completion of the investigation.

The statute is clear that voluntary respondents are "exporters or producers" subject to "individual examination." The rates calculated for them are "individual countervailable subsidy rate[s]." Within the countervailing duty statute, "investigation"/"examination" and "investigated"/"examined" are used interchangeably.

For example, 19 U.S.C. § 1677f–1(e)(2), which provides Commerce with the authority for determining the

countervailable subsidy rates by sampling, states that Commerce may "limit[] its *examination*" where there is a "large number of exporters or producers *involved in the investigation* or review." (emphases added). The Statement of Administrative Action, by statute the "authoritative expression by the United States . . . in any judicial proceeding in which a question arises concerning such interpretation or application" of the countervailing duty statute, § 3512(d), also mixes "investigate/investigation" and "examine/examination." *See, e.g.*, H.R. Doc. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 (". . . in cases where Commerce *has limited its examination* to selected exporters and producers, it nevertheless *will calculate an individual dumping margin for any exporter or producer not selected for examination* that provides the necessary information on a timely basis and in the form required. Although Commerce . . . will not discourage voluntary responses and will *endeavor to investigate* all firms that voluntarily provide timely responses in the form required, in certain cases . . . where the number of exporters or producers is particularly high, Commerce may decline to analyze voluntary responses because it would be unduly burdensome and would preclude the *completion of timely investigations* or reviews." (emphases added)).

Indeed, § 1677m describes the limited number of mandatory respondents as having been "examined" during the "investigation." The language of 19 U.S.C. § 1671d(c)(1)(B)(i)(I) lends further support to the statutory construction here. It states that "[Commerce] shall . . . determine an estimated individual countervailable subsidy rate for each exporter and producer individually investigated, and . . . an estimated all-others rate for all exporters and producers not individually investigated . . . ." § 1671d(c)(1)(B)(i)(I). The two voluntary respondents in this case were individually investigated and received their individual countervailable subsidy rates accordingly.

Because § 1677m(a) recites that the rates of voluntary respondents are "individual countervailable subsidy rate[s]," the voluntary respondents must be understood to be "exporter[s] and producer[s] individually investigated."

Beyond examining the meaning of words, it is also instructive to consider the statutory conflict that would result if "exporters and producers individually investigated" were construed not to include the voluntary respondents. On one hand, § 1671d(c)(1)(B)(i) provides that Commerce "*shall* . . . determine an estimated all-others rate *for all exporters and producers not individually investigated.*" (emphasis added). On the other hand, § 1677m recites that Commerce "*shall* establish an individual countervailable subsidy rate . . . *for any exporter or producer* not initially selected for individual examination . . . *who submits* . . . *the information requested* from exporters or producers selected for examination," *i.e.*, for the voluntary respondents. (emphasis added). The construction adopted by the Court of International Trade would mean that Commerce "shall" impose on the voluntary respondents both the "individual countervailable subsidy rate" under § 1677m and the all-others rate under § 1671d(c)(1)(B)(i). That is an impossible result. The Court of International Trade accidentally created a conflict in the statute where none exists.

Were there need for more, as a matter of the plain meaning of words, there is no ambiguity in the word "individually" or in the word "investigated." In the context of the countervailing duty statute, there is no possible doubt that a voluntary respondent who receives his individual rate has undergone "individual investigation."

In *MacLean-Fogg I*, the Court of International Trade found an ambiguity on the basis that the general rule for calculating the all-others rate did not explicitly state that the rates of "all" exporters and producers individually investigated be included. 836 F. Supp. 2d at 1373. This

reasoning lacks support because the general rule itself specifies its own exclusions: "any zero and de minimis margins, and any margins determined entirely on the basis of the facts available." § 1671d(c)(5)(A)(i). The existence of exclusions means that Congress intended all "weighted average countervailable subsidy rates established for exporters and producers individually investigated" be factored into the calculation unless the conditions for exclusion are met.

For the same reason, the Court of International Trade erred in stating that the statute "does [not] clearly specify which particular subset of respondents Commerce is to rely upon when setting the all-others rate." *MacLean-Fogg I*, 836 F. Supp. 2d at 1373. By setting forth exclusions, Congress must be understood to intend that the rates of all individually investigated respondents be relied upon unless the rates fall within one of the exclusions.

We also conclude that ambiguity cannot be found in the specific method for calculating the all-others rate under § 1671d simply because § 1677f-1(e)(2) provides that the rates calculated for mandatory respondents "shall be used to determine the all-others rate under section 1671d(c)(5) of this title." Section 1671d(c)(5) itself limits § 1677f-1(e)(2) by excluding from the all-others rate calculation any mandatory respondent rate that is zero, de minimis or determined using AFA, which demonstrates that the specific all-others rate calculation statute governs the determination of the all-others rate. The fact that some rates determined for mandatory respondents shall be used in calculating the all-others rate does not suggest that rates determined for individually investigated voluntary respondents must be excluded from the calculation of the all-others rate.

The Court of International Trade in *MacLean-Fogg II* did consider the use of the word "investigate" in the Statement of Administrative Action to refer to the volun-

tary respondents, but regarded it as a "neutral verb" which does not always include voluntary respondents in its scope. 853 F. Supp. 2d at 1256. "Investigate," by itself alone, may be neutral, but the disputed term, "exporters and producers individually investigated," is not. Given that § 1671d repeatedly refers to "exporters and producers individually investigated" and "exporters and producers not individually investigated," the language "exporters and producers individually investigated" must be understood to be a term of art. That the Statement of Administrative Action would refer to a specific group of respondents with the word "investigate" is therefore of critical importance to understanding whether "exporters and producers individually investigated" encompasses such respondents.

We thus conclude that the Court of International Trade erred in holding that the statute is ambiguous on the question of whether the countervailing duty rates (other than zero or de minimis) of voluntary respondents must be included in the general rule for calculation of the all-others rate. Because the statute is clear that such voluntary respondent rates must be included in the general all-others rate calculation, Commerce's regulatory interpretation to the exact contrary is invalid. Commerce's rationale for its regulation is therefore irrelevant and cannot serve to create ambiguity where none exists.

## IV

The legislative history confirms that voluntary respondents are individually investigated. As the House Report explains,

Section 264. Determination of countervailable subsidy rate

*Present law*

Section 703(d)(1) of the Act [codified as 19 U.S.C. § 1671b(d)(1)] currently provides that Commerce

shall, if its preliminary [countervailing duty] determination is affirmative, order the suspension of liquidation of all entries of merchandise subject to the determination . . . .

*Explanation of provision*

Section 264(a) of H.R. 5110 amends section 703(d)(1) of the Act to provide that when Commerce issues an affirmative preliminary [countervailing duty] determination, it will determine an individual countervailable subsidy rate to be applied to each exporter and producer individually investigated and an "all-others" rate to be applied to those exporters and producers who were not individually investigated . . . . Section 705(c)(1)(B) [codified as 19 U.S.C. § 1671d(c)(1)(B)] would apply similar rules to affirmative final [countervailing duty] determinations.

Section 264(b)(2) of H.R. 5110 amends section 705(c) of the Act to establish rules for calculating the all-others rate and the country-wide subsidy rate.

*Reasons for change*

The change is necessary to conform U.S. law to the Agreement.

H.R. REP. NO. 103-826, at 118 (1994). *See also* Statement of Administrative Action, H.R. DOC. NO. 103-316 at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201 ("Recognizing the impracticality of examining all producers and exporters in all cases[,] Article 9.4 of the Antidumping Agreement permits the use of an all others rate to be applied to non-investigated firms. . . . [S]ection 735(c)(5)(A) to the Act [codified as 19 U.S.C. § 1673d(c)(5)(B)] . . . provides that the all others rate will be equal to the weighted average of individual dumping margins calculated for those exporters and producers that are individually investigated,

exclusive of any zero and *de minimis* margins, and any margins determined entirely on the basis of the facts available.").

The legislative history confirms that those who are "individually investigated" receive an "individual countervailable subsidy rate" and those who are "not individually investigated" receive an "all-others" rate. 19 U.S.C. § 1677m(a) recites that voluntary respondents receive an "individual countervailable subsidy rate." Consequently, they are "individually investigated" within the meaning of § 1671d(c)(5)(A). There is no room for an alternative understanding.

V

It is further instructive to consider the history of the countervailing duty statute, because, as the Statement of Administrative Action provides, "[19 U.S.C. § 1677m, the voluntary respondent provision,] generally codifies existing practice." H.R. DOC. NO. 103-316 at 873, *reprinted in* 1994 U.S.C.C.A.N. at 4201.

Prior to the amendments to the Tariff Act in 1994, an all-others rate did not exist. Instead, a country-wide duty rate, "equal to the amount of the net subsidy determined or estimated to exist," "shall presumptively apply to all merchandise of such class or kind exported from the country investigated." 19 U.S.C. § 1671e(a) (1986) (amended 1994). Even with this presumption, however, "differing countervailing duties" may be provided when "the administering authority determines there is a significant differential between companies receiving subsidy benefits." *Id.* Unlike the statute as it is today, the countervailing statute did not state how a country-wide duty rate is to be "determined or estimated to exist" or how individual rates are to be tabulated to ascertain "a significant differential." *See Ipsco, Inc. v. United States*, 899 F.2d 1192, 1195-96 (Fed. Cir. 1990).

However, "[t]he regulations require Commerce to determine, to the extent practicable, if a producer received a significantly different net subsidy, by comparing the net subsidy received by the producer with the weighted-average net subsidy calculated on a country-wide basis." *Kajaria Iron Castings Pvt. Ltd. v. United States*, 156 F.3d 1163, 1177 (Fed. Cir. 1998) (applying the law as it was prior to the 1994 amendments (citing 19 C.F.R. § 355.22(d)(1) (1992))). Accordingly, the regulations set forth the "[c]alculation of individual rates." 19 C.F.R. § 355.20(d) (1993). "If the Secretary decides that an individual . . . producer or exporter received a significantly different net subsidy, . . . the Secretary will state . . . an individual estimated net subsidy for that person." § 355.20(d)(2) (1993).

The regulations also set forth a mechanism for producers and exporters to apply for exemption to the presumptive country-wide rate. § 355.14(a) (1993) ("Any producer or exporter . . . which desires exclusion from a countervailing duty order must submit to the Secretary . . . an irrevocable written request for exclusion."). "The Secretary will investigate requests for exclusion to the extent practicable in each investigation." *Id.* If investigated, these producers and exporters will get an "individual rate, calculated in accordance with paragraph (d) of [the aforementioned § 355.20 (1993)], [which] will be either the weighted-average net subsidy calculated on a country-wide basis or the individual rate calculated for that person." § 355.20(e) (1993).

The producers and exporters whose "requests for exclusion" from the presumptive country-wide rate are "investigat[ed]" and who receive an "individual rate" are the forerunners of the voluntary respondents. §§ 355.14, 355.20 (1993). To the extent that the countervailing duty statute codifies this existing practice, it also codifies that voluntary respondents are "individually investigated" within the meaning of the statute.

In addition, in the pre-1994 regime, rates calculated for producers and exporters investigated and assigned individual rates were factored into calculation of the country-wide rate. For example, in *Kajaria Iron Castings*, producers who received the country-wide rate challenged the method of calculating that rate. Commerce had, pursuant to its regulations, determined that three producers had received a "significantly different net subsidy" from the country-wide rate Commerce had calculated based on information obtained from all the companies investigated. 156 F.3d at 1166. The significantly different net subsidies were 0%, 41.75%, and 16.14% compared to the country-wide subsidy rate of 5.53%. *Id.* The challengers argued that the higher net subsidy rates established for the individual companies should have been excluded from the calculation of the country-wide rate. We rejected that challenge, *Kajaria Iron Castings*, 156 F.3d at 1177, relying on our previous decision in *Ipsco*, 899 F.2d 1192. In *Ipsco*, in calculating the country-wide rate, Commerce excluded the Canadian producers who received no countervailable subsidy (zero rate countervailing duty) or de minimis subsidies from the country-wide rate calculation. We sustained the challenge to Commerce's methodology, holding that the rates of all companies, including those receiving no or de minimis subsidies must be included in the country-wide average net subsidy rate. 899 F.2d at 1196.

The law and regulations as they were before 1994 thus contemplated that Commerce would assign individual countervailing duty rates to individually investigated producers, and would include any such rates in the calculation of the country-wide rate.

## VI

Accordingly, "exporters and producers individually investigated" in the context of 19 U.S.C. § 1671d(c)(5)(A) must be read to encompass the voluntary respondents. On

the current facts, the precondition for invoking the exception provision, that "the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e of this title," has not been met. § 1671d(c)(5)(A)(ii). We reverse the decision of the Court of International Trade and remand for determination of the all-others rate under the general rule, § 1671d(c)(5)(A)(i).

## REVERSED AND REMANDED

Costs

No costs.

# United States Court of Appeals
# for the Federal Circuit

_____

**MACLEAN-FOGG COMPANY, AND FISKARS BRANDS, INCORPORATED,**
*Plaintiffs,*

AND

**NINGBO YILI IMPORT & EXPORT CO., LTD.,**
*Plaintiff,*

AND

**EVERGREEN SOLAR, INC.,**
*Plaintiff-Appellant,*

AND

**EAGLE METALS DISTRIBUTORS, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendant-Appellee.*

_____

2013-1187

---

Appeal from the United States Court of International Trade in Nos. 11-CV-0209, 11-CV-0210, 11-CV-0220, and 11-CV-0221, Chief Judge Donald C. Pogue.

---

REYNA, *Circuit Judge*, dissenting.

I disagree with the majority that 19 U.S.C. § 1671d(c)(5)(A)(i)-(ii) ("Section 1671d") unambiguously requires that the voluntary respondent rates be included in the all-others rate calculation. Because I find the statute ambiguous and Commerce's interpretation reasonable, I would affirm the Court of International Trade's decision affirming a final all-others countervailing duty rate of 137.65% in this investigation. I therefore respectfully dissent.

## BACKGROUND

A complete statement of the background of this case is essential to understanding the issues involved on appeal. The present appeal concerns a countervailing duty investigation on imports of aluminum extrusions from China initiated by Commerce on April 20, 2010. *Aluminum Extrusions from the People's Republic of China*, 75 Fed. Reg. 22,114 (Dep't of Commerce Apr. 27, 2010). The petition that triggered the investigation identified as potential respondents 114 Chinese exporters and producers of aluminum extrusions. Due to limited agency resources, Commerce decided to limit the investigation to the three largest companies based on export volume (the "mandatory respondents").

The investigation initially focused on 29 subsidy programs alleged in the petition. Commerce issued a questionnaire to the mandatory respondents regarding these programs, but none of the mandatory respondents submitted a response. Two other Chinese companies identi-

fied in the petition, however, requested "voluntary respondent" status and submitted questionnaire responses. The Government of China also submitted a questionnaire response.

Commerce published its preliminary results on September 7, 2010. *Aluminum Extrusions from the People's Republic of China*, 75 Fed. Reg. 54,302, at 54,321 (Dep't of Commerce Sept. 7, 2010). Because the mandatory respondents failed to cooperate in the investigation by declining to respond to the questionnaire, Commerce calculated their preliminary countervailing duty rate using "adverse facts available" (AFA). Pursuant to 19 U.S.C. § 1677e(b), Commerce may use an adverse inference in selecting among facts derived from the petition, the record, or any previous investigation. Commerce explained that it typically relies on the rates calculated for cooperating respondents when calculating an AFA rate. Because in this case there were no cooperating mandatory respondents, Commerce used the highest non-de minimis rate calculated for the same or similar subsidy program in another China countervailing duty proceeding, in accordance with its established practice. Where no non-de minimis subsidy rates calculated for the same or similar program existed, Commerce applied "the highest calculated subsidy rate for any program otherwise listed that could conceivably be used by the non-cooperating companies." *Id.* at 54,321. Following this procedure, Commerce arrived at a 137.65% preliminary countervailing duty rate for the mandatory respondents. *Id.* at 54,305. For the two voluntary respondents, Commerce calculated rates of 6.18% and 10.37% based on their separate, company-specific data. *Id.*

For the exporters and producers not designated as mandatory or voluntary respondents (the "all-others respondents"), Commerce calculated a preliminary "all-others" rate equal to the preliminary AFA rate for the mandatory respondents. As the basis for this methodolo-

gy, Commerce relied on 19 C.F.R. § 351.204(d)(3), which provides that countervailing duty rates calculated for voluntary respondents should be excluded from the all-others rate calculation. Commerce acknowledged that, in prior investigations, it had calculated the all-others rate by averaging the AFA rates of the non-cooperating, mandatory respondents with the rate calculated for voluntary respondents. But Commerce explained that, upon further examination, it found that approach was not appropriate in this case because the "potential for voluntary respondents' net subsidy rates to distort or manipulate the all-others rate is too great." *Id.* at 54,321.

After receiving case briefs and rebuttal comments from interested parties, including Appellants, Commerce issued a final determination calculating a final AFA rate of 374.15% for the mandatory respondents. *Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 18,521 (Dep't of Commerce Apr. 4, 2011). Commerce included in the investigation and its calculation of the final AFA rate 25 additional subsidy programs identified by petitioners during the course of the investigation. Commerce also increased the subsidy-specific rate for some programs. Commerce revised the rate for the two voluntary respondents to 8.02% and 9.94%.

Commerce continued to apply the AFA rate (which had increased to 374.15%) to the all-others respondents. In a memorandum responding to the comments submitted by interested parties, Commerce noted that 19 C.F.R. § 351.204(d)(3) mandates exclusion of the voluntary respondent rates from the all-others rate calculation. Quoting comments accompanying the promulgation of this rule, Commerce explained that the Tariff Act was silent regarding whether voluntary respondent rates should be included, and that Commerce had therefore looked at the World Trade Organization (WTO) Anti-Dumping Agreement for guidance:

> Article 9.4 of the [Anti-Dumping] Agreement provides that the duties applied to "exporters or producers not included in the examination" (*i.e.*, "all-others") may not exceed the weighted-average margin for the "selected exporters or producers." This implies that those exporters or producers not "selected" are not considered to be included in the "examination." Therefore, the better interpretation of section 705(c)(5) or 735(c)(5) of the Act is that producers who are not "selected" by the Department (*i.e.*, voluntary respondents) are not considered to have been "examined" (*i.e.*, investigated), so that their margins should not contribute to the "all-others" rate. In effect, the Department conducts parallel proceedings for voluntary respondents.

Joint Appendix (J.A.) at 245 (quoting *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, at 27,310 (Dep't of Commerce May 19, 1997)). Commerce also explained that excluding voluntary respondent rates from the all-others rate "serves the obvious purpose of preventing distortion or outright manipulation of the all-others rate" because exporters or producers most likely to submit voluntary responses "are those with reason to believe that they will obtain a lower margin by volunteering than by being subject to the all-others rate." J.A. at 246 (quoting 62 Fed. Reg. at 27,310).

Appellants and other importers and Chinese producers filed suit in the Court of International Trade alleging that Section 1671d unambiguously requires that the voluntary respondent rates be included in the all-others rate calculation. The Court of International Trade disagreed, finding that the statute was ambiguous and that Commerce's interpretation excluding voluntary respondent rates was reasonable. *MacLean-Fogg Co. v. United States*, 836 F. Supp. 2d 1367, 1373-74 (Ct. Int'l Trade 2012). The court nevertheless found that Commerce had

not established that excluding the voluntary respondent rates from the all-others rate calculation was "a reasonable method" under § 1671d(c)(5)(A)(ii) because there was no "logical connection" between the AFA rate and the all-others respondents. *Id.* at 1375-76. The court remanded for Commerce to recalculate the all-others rate or explain why adopting the AFA rate for the all-others respondents constituted a reasonable method. *Id.*[1]

On remand, Commerce retained its methodology for calculating the all-others rate based on the mandatory respondents' AFA rate. Commerce argued that its approach was reasonable because the three mandatory respondents represented a significant portion of the relevant market and were therefore representative of the all-others respondents. The Court of International Trade disagreed, finding that Commerce had failed to explain why the AFA rate was remedial and not punitive when applied to the all-others respondents, who Commerce had not found to be non-cooperative. *See MacLean-Fogg Co. v. United States*, 853 F. Supp. 2d 1336, 1343 (Ct. Int'l Trade 2012). First, the court noted that the AFA rate assumed that the mandatory respondents benefited from all 54 subsidy programs included in the investigation, but Commerce had provided no reason why the same assumption applied to the all-others respondents, who are smaller than the mandatory respondents. *See id.* at 1342. Second, the court observed that Commerce had failed to

---

[1]    The court declined to review the preliminary all-others rate. *MacLean-Fogg*, 836 F. Supp. 2d at 1375 n.11. In a subsequent opinion, the court clarified that the preliminary all-others rate was subject to the same "reasonable method" standard as the final rate but deferred review until receiving Commerce's remand determination. *MacLean-Fogg Co. v. United States*, 853 F. Supp. 2d 1253 (Ct. Int'l Trade 2012).

justify its assumption that the all-others respondents benefited from subsidies specific to certain geographic areas. *See id.* at 1343. The court thus remanded the case again for Commerce to reconsider the all-others rate.

On the second remand, Commerce adopted the 137.65% preliminary AFA rate as the final all-others rate. Commerce found it reasonable to assume that the all-others respondents might not have benefited from the 25 subsidy programs added during the investigation, which had been examined solely with respect to the voluntary respondents. Commerce thus concluded that the preliminary rate was reasonable because it only included the 29 programs that were investigated in connection with the mandatory respondents. Commerce also noted that, although certain programs were location-specific, it had to assume use of those programs because the record was incomplete regarding the location of the all-others respondents and it was not reasonable to extrapolate the locations of manufacturing facilities or company affiliations from the addresses included in the petition.

The Court of International Trade affirmed the 137.65% all-others rate, finding that the rate was reasonable given "the limitations of the administrative record." *MacLean-Fogg Co. v. United States*, 885 F. Supp. 2d 1367, 1342 (Ct. Int'l Trade 2012). The court found that adopting the preliminary AFA rate—based on a reduced number of subsidy programs—sufficiently addressed its concern that the rate should not be punitive. The court rejected Appellants' attempts to show that the all-others rate was based on program-specific rates that are aberrant and unrepresentative when compared to historical data, noting that Commerce is only required to provide a reasonable rate, not necessarily "a perfect one." *Id.* The court also determined that the methodology used to calculate the preliminary rate for the mandatory respondents was reasonable as applied because the mandatory

respondents account for the vast majority of aluminum exports from China. *See id.*

This appeal followed.

## DISCUSSION

### I

Section 1671d is ambiguous with respect to the precise question at issue: whether Commerce is required to include voluntary respondent rates when calculating the all-others rate under the general rule. At issue in this case is not the nomenclature developed by Commerce to distinguish classes of respondents, but how the statute dictates that rates should be calculated depending on whether a company is selected for investigation or not. Section 1671d states that Commerce shall use the weighted average rates calculated for respondents "individually investigated," excluding rates that are zero, de minimis, or determined entirely under facts available. 19 U.S.C. § 1671d(c)(5)(A)(i). The statute does not define "individually investigated" as used in Section 1671d.

I disagree with the majority that the requirement to calculate an "individual" rate for voluntary respondents implies that voluntary respondents are "individually investigated" within the meaning of Section 1671d. The fact that voluntary respondents must receive an individual rate does not directly address the question of whether such rate must be included in the all-others rate calculation. "Voluntary" respondents are not selected for individual-specific investigation. Commerce may accept voluntary respondents at its discretion, and only if they submit the relevant information in a complete and timely manner. *See id.* § 1677m(a)(1)-(2). The optional nature of the process suggests that it provides a mechanism for respondents "not initially selected" to be excepted from the all-others rate, and was not necessarily intended to

inject an additional variable into the mandatory process of calculating the all-others rate.

Indeed, the statute clearly distinguishes voluntary respondents from those that were "initially selected for individual investigation" by Commerce. *See id.* § 1677m(a). The parties do not dispute that the respondents "initially selected for individual investigation" are the mandatory respondents. And § 1677f-1 expressly provides that the individual countervailable subsidy rates determined for the mandatory respondents "shall be used to determine the all-others rate under section 1671d(c)(5) of this title." *Id.* § 1677f-1(e). Because this section neither forecloses nor mandates inclusion of the voluntary respondent rates in the all-others rate calculation, I would hold that the statute is ambiguous with respect to the precise question presented here.[2]

I also find that Commerce's interpretation of Section 1671d—embodied in 19 C.F.R. § 351.204(d)(3)—is based on a permissible construction of the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984). In promulgating the regulation, Commerce looked at the WTO Anti-Dumping Agreement for guidance, which provides:

> When authorities have limited their examination
> in accordance with the second sentence of para-

---

[2]   The majority states that "[t]he fact that some rates determined for mandatory respondents shall be used in calculating the all-others rate does not suggest that the rates determined for individually investigated voluntary respondents *must be excluded* from the calculation of the all-others rate." Maj. Op. at 13 (emphasis added). I agree, and thereby point out that the majority's position on this issue highlights the ambiguity in the statute.

graph 10 of Article 6, any anti-dumping duty applied to imports from exporters or producers not included in the examination shall not exceed:

    (i) the weighted average margin of dumping established *with respect to the selected exporters or producers* or,

    (ii) where the liability for payment of anti-dumping duties is calculated on the basis of a prospective normal value, the difference between the weighted average normal value of the selected exporters or producers and the export prices of exporters or producers not individually examined,

provided that the authorities shall disregard for the purpose of this paragraph any zero and de minimis margins and margins established under the circumstances referred to in paragraph 8 of Article 6. The authorities shall apply individual duties or normal values to imports from any exporter or producer *not included in the examination who has provided the necessary information during the course of the investigation*, as provided for in subparagraph 10.2 of Article 6.

*Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade 1994*, art. 9.4, Apr. 15, 1994, 1868 U.N.T.S. 201 (emphasis added).

The WTO Anti-Dumping Agreement was approved by Congress as part of the Uruguay Round Agreements Act. Pub. L. 103-465, § 101, 108 Stat. 4809, 4814-15 (1994) (codified at 19 U.S.C. § 3511). Absent express language to the contrary, a statute should not be interpreted to conflict with international obligations. *See Fed.-Mogul Corp. v. United States*, 63 F.3d 1572, 1581 (Fed. Cir. 1995) ("GATT agreements are international obligations, and absent express Congressional language to the contrary,

statutes should not be interpreted to conflict with international obligations."). By making an implicit distinction between "selected" respondents and those "not included in the examination [that have] provided the necessary information during the course of the investigation[,]" Article 9.4 supports Commerce's conclusion that voluntary respondents are examined in "parallel" to those companies "included in the investigation." *See* 62 Fed. Reg. at 27,310. Hence, Commerce's conclusion that voluntary respondents are not "individually investigated" within the meaning of Section 1671d is reasonable.

Commerce's interpretation does not create a "statutory conflict" by mandating imposition on the voluntary respondents of two different rates—the individual rate and the all-others rate. *See* Maj. Op. at 12. When properly understood as examined in "parallel," the voluntary respondents are not included in the group of respondents "not individually investigated" who must receive an all-others rate pursuant to § 1671d(c)(1)(B)(i). Likewise, this understanding that voluntary respondents are examined in parallel explains why Congress had no need to include voluntary respondent rates in the list of exclusions to the general rule of Section 1671d. *See* Maj. Op. at 12-13.

The majority's reliance on the "history of the countervailing duty statute" is also misplaced. *See id.* at 16. It is true that, prior to the 1994 amendments to the Tariff Act, the calculation of the country-wide rate had to include any "individual rates" calculated for whom the majority views as the "forerunners" of the voluntary respondents. *See id.* at 17-18. But the reason for such rule was that zero and de minimis rates also had to be included. *See Kajaria Iron Castings Pvt. Ltd. v. United States*, 156 F.3d 1163, 1178 (Fed. Cir. 1998) (explaining that it would be inconsistent to exclude individual rates when zero and de minimis rates must be included). In contrast, the current statute explicitly excludes zero and de minimis rates from the all-others rate calculation. Accordingly, "the pre-1994

regime" not only does not support the majority's conclusion, but actually supports Commerce's determination that, under the current regime, it is reasonable to exclude voluntary respondent rates from the all-others rate calculation.

Finally, I agree with Commerce that excluding voluntary respondent rates from the all-others rate calculation serves the purpose of preventing distortion or manipulation of data. For example, exporters or producers "not initially selected" whose own data suggests an incentive to participate on a voluntary basis could decide not to participate (or refuse to cooperate) should they determine that other respondents with lower countervailable subsidy rates could drive the all-others rate lower than their own voluntary respondent rate. I would hold that Commerce's regulation excluding voluntary respondent rates from the calculation of the all-others rate is reasonable and entitled to *Chevron* deference. I therefore respectfully dissent.

## II

The majority does not reach the question of whether the methodology used by Commerce to determine the all-others rate in this case was a "reasonable method" pursuant to § 1671d(c)(5)(A)(ii). *See* Maj. Op. at 7. Appellants argue that it is not, although they apparently concede that Commerce may use AFA rates "in some reasonable fashion" in calculating the all-others rate. *See* Reply Br. 12; *see also Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (calculating the all-others rate by taking the simple average of a de minimis rate and a total AFA rate assigned to two mandatory respondents is a "reasonable method"). Specifically, Appellants contend that Commerce is not permitted to apply to the all-others respondents, which were never found to be non-cooperative, a rate *entirely* based on AFA rates. Additionally, Appellants argue that the

137.65% rate is aberrant and punitive because it assumes "a worst-case scenario" that each of the all-others respondents benefited from all of the 29 original programs at the highest benefit rate ever calculated in a prior China countervailing duty investigation.

I disagree that Commerce may not adopt an all-others rate based entirely on AFA rates calculated for mandatory respondents. Section 1671d(c)(5)(A)(ii) expressly permits "averaging the weighted average countervailable subsidy rates" calculated for the mandatory respondents when they are all zero, de minimis, or determined entirely on the basis of facts available. There is nothing in the statute that forecloses the adoption of a weighted average of the mandatory respondents' rates when they are all AFA rates.

Likewise, the Statement of Administrative Action, recognized by Congress as an "authoritative expression" of the interpretation and application of the Tariff Act, *see* 19 U.S.C. § 3512(d), explicitly contemplates that a "reasonable method" under the exception to the general rule of Section 1671d may include AFA rates:

> In such situation, Commerce may use any reasonable method to calculate the all others rate. The expected method in such cases will be to weight average the zero and de minimis margins and margins determined pursuant to facts available, provided the volume data is available.

*Statement of Administrative Action Accompanying the Uruguay Round Agreements Act*, H.R. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201. Indeed, adopting a weighted average of the mandatory respondents' rate is the "expected" method unless it results in an average "that would not be reasonably reflective" of potential countervailing subsidy margins for the all-others respondents. *See id.* I thus would reject Appellants' argument that an all-others rate may not be

based entirely on AFA rates, regardless of whether a finding of non-cooperation has been made with respect to the all-others respondents.

I also find that adopting an all-others rate equal to the preliminary AFA rate is reasonable under the facts of this case. Commerce reasonably concluded that the all-others respondents might not have benefited from the additional 25 programs examined solely with respect to the voluntary respondents, and appropriately adopted an all-others rate based only on the 29 subsidy programs included in the initial petition. Given "the limitations of the administrative record," *MacLean-Fogg*, 885 F. Supp. 2d at 1342, it was not unreasonable for Commerce to assume that the all-others respondents, like the mandatory respondents, received benefits under each of these programs at the highest rate on record for identical or similar programs in prior China countervailing duty investigations. I see no error in Commerce declining to take into consideration information pertaining to individual circumstances that Commerce had no obligation to consider. Had a majority of the panel upheld Commerce's regulation, I would also hold that substantial evidence supports Commerce's determination to adopt the preliminary AFA rate for the all-others respondents.